IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| IFS FINANCIAL CORPORATION, | § § § | NO. 02-39553-H4-7<br>(Chapter 7) |
| Debtor | § | |

**TRUSTEE'S MOTION FOR AUTHORITY TO COMPROMISE CONTROVERSIES**

NOTICE

IF YOU WANT A HEARING, YOU MUST REQUEST ONE IN WRITING AND YOU MUST RESPOND SPECIFICALLY TO EACH PARAGRAPH OF THIS PLEADING. YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY (20) DAYS FROM THE DATE YOU WERE SERVED AND GIVE A COPY TO THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF.

IF A PARTY REQUESTS EMERGENCY CONSIDERATION, THE COURT MAY ACT EXPEDITIOUSLY ON THE MATTER. IF THE COURT ALLOWS A SHORTER RESPONSE TIME THAN TWENTY DAYS, YOU MUST RESPOND WITHIN THAT TIME. IF THE COURT SETS AN EMERGENCY HEARING BEFORE THE RESPONSE TIME WILL EXPIRE, ONLY ATTENDANCE AT THE HEARING IS NECESSARY TO PRESERVE YOUR RIGHTS. IF AN EMERGENCY HEARING IS NOT SET, YOU MUST RESPOND BEFORE THE RESPONSE TIME EXPIRES

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Comes now W. Steve Smith, Trustee ("Trustee") of the bankruptcy estate of IFS Financial Corporation ("IFS"), and files his Motion for Authority to Compromise Controversies, respectfully showing unto the Court as follows:

1. An involuntary petition under Chapter 7 of Title 11 of the United States Bankruptcy Code was filed against IFS on August 23, 2002. On October 11, 2002, an Order for Relief was entered and on October 15, 2002, Trustee was appointed.

2. At the time of bankruptcy commencement, IFS was a defendant in Civil Action No. H-00-2247, *Blitz Holdings Corp. v. Interamericas Financial Holdings Corp, et al.* pending

in the United States District Court for the Southern District of Texas, Houston Division, before the Honorable Lee H. Rosenthal, U.S. District Judge (the "Blitz Litigation"). The other defendants in the Blitz Litigation included IFS and Hugo Pimienta ("Pimienta"), a major principal of IFS.

3.   From the Blitz Litigation, a Final Judgment was entered on June 28, 2002 in favor of Blitz Holdings Corp. ("Blitz") in the principal sum of $64,747,198.48, plus post-judgment interest, plus costs of $46,000.00, plus attorney's fees of $500,000.00 (the "Final Judgment"). On August 19, 2002, the Court, in the Blitz Litigation, entered an Order Directing Turnover in Aid of Judgment (the "Turnover Order"). By the Turnover Order, as supplemented by another document filed in the Blitz Litigation, titled Receipt of Assets Pursuant to Order Directing Turnover in Aid of Judgment, the Court found the following property to be owned or subject to the control of IFS and ordered the turnover thereof to Blitz in partial satisfaction of the Final Judgment and the $4.7 million contempt sanctions ordered by the Court on June 27, 2002:

  i.   4,273 [5,243][1] shares of limited liability company interests in Latin America Money Services, LLC (i.e. LAMS);

  ii.  7,362 shares stock in FICEN which appears on the financial records of IFS as an asset of IFS from and after April 30, 2000, which currently appear in FICEN's Shareholders' Book as in the name of Interamericas Corp., which are further described as follows:

       Series B     Series B-4    Series B-5    Series B-6
       4,729        1,175         460           998

  iii. the original promissory note in the original principal sum of $13 million dated March 15, 2000 executed by SouthSea Corp. payable to IFS, along with any renewals and extensions and all security agreements and guarantees;

---

[1] By Order entered September 6, 2002, the number of shares was increased from 4,273 to 5,243

2

 iv. the original promissory note in the original principal sum of $3 million dates March 15, 2000 executed by Larce, Inc., payable to IFS, along with any renewals and extensions and all security agreements and guarantees;

 v. all shares of stock in Interstar Investment Corp. held in the name of IFS, or to which IFS has legal or beneficial ownership or interest;

 vi. all shares of stock in IFS Management Corporation held in the name of IFS, or to which IFS has legal or beneficial ownership or interest;

 vii. all shares of stock in IFS Insurance Holdings Corporation held in the name of IFS, or to which IFS has legal or beneficial ownership or interest;

 viii. all cash;

 ix. all monies and investments in deposit accounts, certificates of deposits, bonds, money market accounts and brokerage accounts in the name of IFS or in which IFS has signatory authority or beneficial interests or rights;

 x. all life insurance policies for which IFS is a beneficiary;

 xi. all records relating to the transfer of funds by, from, between and/or to the following entities:

  A. Amper, Int'l., Ltd. a/k/a Amper;
  B. INV Capital, Ltd. a/k/a INV Capital a/k/a INV; and
  C. INV Services a/k/a INV;

 xii. IFS's right, title and interest in all causes of action asserted and/or to be asserted against the former officers of Accubanc and Grant Thornton in connection with the allegations in a suit currently pending in Harris County State District Court; Cause No. 2001-55915, along with all litigation files, pleadings and documents related to the causes of action;

 xiii. the original promissory note in the original principal sum of $5 million dated June 22, 1999 executed by NORTHSEA CORP. payable to IFS Insurance Holdings Corporation, along with the original Tri-party Security Agreement Collateral Transfer of Notes and Liens Security Same executed by NORTHSEA CORP. and Gonzalo Romero Matias, and guarantees;

 xiv. NORTHSEA Note dated February 28, 1997 (in Spanish); Pledge

Agreement executed by Dr. Giovanni Pirri Ardizzone on behalf of Palatina, S.A. De C.V., dated February 28, 1997;

1. Letter Agreement in support of Security Agreement (in Spanish);
2. Security Agreement (in Spanish);
3. Original Promissory Note (in Spanish);
4. Irrevocable Stock Power;
5. Original Security Agreement;
6. Stock Certificate No. 1-"A";
7. Stock Certificate No. 1-"B";
8. Appraisal;
9. Certificate of Corporate Resolutions;
10. NORTHSEA Unanimous Written Consent dated 6/18/99; and
11. IFS Unanimous Written Consent dated 6/18/99.

xv. Integra Management Services Corporation Stock Certificate No. 1;

xvi. Integra Insurance Holdings Corporation Stock Certificate No. 2;

xvii. Integra Insurance Holdings Corporation Stock Certificate No. 3;

xviii. Interstar Investment Corp. Stock Certificate No. 7;

xix. Interstar Investment Corp. Stock Certificate No. 9;

xx. Interstar Investment Corp. Stock Certificate No. 10;

xxi. Interstar Investment Corp. Stock Certificate No. 12;

xxii. Corporate seal of Interstar Investment Corp.;

xxiii. Corporate seal of Integra Insurance Holdings Corp;

xxiv. Integra Insurance Holdings Corp. Certificate No. 1;

(The LAMS interests shall be referred to as the "LAMS Interests", the FICEN stock shall be referred to as the "FICEN Stock" and all other properties identified and/or turned over shall be referred to as the "Other IFS Property.")

4. The properties, collectively, shall be referred to as the "IFS Properties." The LAMS documentation and the FICEN stock was turned over directly to Blitz with

4

authorization to effect their sale and to thereafter place the proceeds in the Court's registry for further order thereon. Blitz has attempted to sell the LAMS Interests, but has been unsuccessful. It has attempted to receive financial information from LAMS, but has been repeatedly put off, delayed, and/or passed on from one attorney to the next, without success.[2] Blitz has obtained re-registration into its name of the FICEN Stock and has undertaken sales negotiations, but no sale has yet occurred. The Other IFS Properties have been turned over in part into the Court's registry.

5. Upon Trustee's appointment, Blitz moved the District Court for a ruling that the IFS Properties never became property of the IFS Bankruptcy Estate, and sought the release from the Court's registry of the Other IFS Properties and the release from the obligation to account back to the Court's registry of the LAMS Interest and of FICEN Stock. Blitz relied on a line of cases holding that the turnover order divested IFS and the Trustee, as successor, of any interest in the IFS Properties.

6. Trustee responded, urging the Court to leave the IFS Property as, automatically, property of the IFS Bankruptcy Estate, distinguishing Blitz' line of cases based upon the absence of finality of the Turnover Order in this case and tolling of the appeal time due to Bankruptcy commencement four (4) days after entry of the Turnover Order. Trustee urged further, and alternatively, in his response to the District Court that to grant Blitz' motion would create the classic preference scenario—the transfer would have been pursuant to the Turnover Order, entered four (4) days before the bankruptcy commencement, and effected well thereafter; the transfer would have been in partial satisfaction of an antecedent debt, the

---

[2] Trustee and Blitz have just recently attempted to obtain the financial information from LAMS together, and at the request of LAMS, Trustee has now provided in writing his credentials and his requests. Trustee and Blitz are awaiting response.

Final Judgment, entered June 28, 2002; the District Court had found on several occasions that no property, other than the IFS Property turned over by the Turnover Order, existed for IFS; with or without regard to the presumption of insolvency, the repeated findings of the District Court establish actual insolvency during the requisite time periods; and there was at least one other creditor of magnitude who would receive nothing of value from this estate unless the transfer was avoided. As such another Court, the Bankruptcy Court, would be placed in the unenviable position of setting aside the effect of the Turnover Order transfer.

7. Trustee and Blitz have reached a settlement. The IFS Properties shall be property of the Bankruptcy Estate and Trustee and Blitz shall request the District Court to order the release to Trustee of the Other IFS Property from the Court's registry and to order the release from the requirement to account back to the Court registry from the sale of the LAMS Interests and the FICEN Stock.

8. Blitz shall waive any ownership of or lien claim upon the IFS Property. However, out of the net sale proceeds from sales of the LAMS Interest and the FICEN Stock, Trustee shall pay one-half (½) upon his receipt, and as received, to Blitz as a credit against the Final Judgment. Trustee does not contest as an allowed unsecured claim of Blitz the balance remaining under the Final Judgment. Trustee and Blitz shall cooperate in a joint effort to realize the greatest recovery from sale of the LAMS Interest and the FICEN stock. That sale shall, however, be only pursuant to Court Order and after notice and hearing. Further, as part of the settlement, Blitz personnel and professionals shall assist Trustee and cooperate with Trustee in his efforts to pursue causes of action and liquidating other property of the estate.

9. Trustee believes that the proposed settlement as set forth herein is in the best

interest of the estate after consideration of the factors set forth in *Protective Committee for Independent Stockholders of TMT Ferry v. Anderson*, 390 U.S. 414 (1968), for the following reasons:

a. <u>Probability of success on the merits</u>. There are several possible outcomes if settlement is not approved:

    i. The District Court may rule that Trustee appeal the Turnover Order, failing which, the District Court will enforce its Turnover Order[3];

    ii. The District Court may rule in favor of Blitz, requiring Trustee to appeal the ruling on that motion or to let it stand and bring a preference action in the Bankruptcy Court. A favorable ruling for Trustee in the Bankruptcy Court may be appealed back to the very Court which caused the preferential transfer; ; or

    iii. The District Court may rule for Trustee and Blitz may appeal

Each of the possible outcomes presents obstacles to a 100% determination of probability of success on the merits.

b. <u>Complexity, expense and likely duration of the required litigation</u>. The issues are complex. Blitz has spent $100's of thousands, if not into the $millions, in pursuing the IFS Property. More would have to be spent on both sides on what could well be lengthy and very expensive litigation. There is no money in the estate to hire the necessary professionals, conduct discovery, and prosecute the litigation.

c. <u>Other considerations</u>. Blitz has expended great sums in obtaining the IFS

---

[3] There are findings concerning the property favorable to Blitz and to the Bankruptcy Estate that should not be disturbed.

Property which is now being turned over to the estate.  Blitz' efforts not only determined title for the bankruptcy estate, but recovered actual possession or the documentary means by which Trustee can pursue and, hopefully, effect possession of property of the estate.  Blitz appears to be far and away the largest creditor and, if so, would take the lion's share of any distribution.  The payment from the sales proceeds of the LAMS Interests and FICEN Stock as an early credit on Blitz' Final Judgment is warranted and is the fair thing to do, especially in view of its continued cooperation and assistance.  This settlement also assures that there will be an estate for all of IFS' creditors.

WHEREFORE, PREMISES CONSIDERED, Trustee prays that the Court grant the Trustee's Motion for Authority to Compromise Controversies as herein provided, and that the Court grant Trustee such other and further relief to which he may be entitled.

Respectfully submitted,

W. STEVE SMITH, P.C.

/s/ W. Steve Smith
W. STEVE SMITH
State Bar No. 18700000
BLANCHE D. SMITH
State Bar No. 00783991
2015 Crocker Street
Houston, Texas  77006
Telephone:  (713) 533-1833
Facsimile:  (713) 533-1834

Z:\Cases\I\IFS Financial\Pleadings\Ttee Motion to Compromise.doc

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Trustee's Motion for Authority to Compromise Controversies* was served on the parties on the Service List[4] attached hereto as Exhibit "A" by United States First Class Mail, postage pre-paid, on the 9th day of April, 2003.

/s/ W. Steve Smith
W. Steve Smith

---

[4] No Schedules have been filed by the Debtor. The Service List results from Trustee's accountant's review of seized/recovered financial books and records and from Trustee's examination of and document production from Pimienta.

EXHIBIT "A"
Service List

Blitz Holdings Corp.
c/o Keavin McDonald
Wilshire, Scott & Deyer, P.C.
3000 One Houston Center
1221 McKinney
Houston, TX 77010

Erwin Aableidinger Innemann
Address unknown

GMAC Mortgage Corp.
1301 McKinney, Suite 5100
Houston, TX 77010-3095

DeLage Landen Financial Services
925 Harvest Drive, Suite 220
Blue Bell, PA 19422

Interstar
c/o Hugo Pimienta
11004 Bellagio Place
Los Angeles, CA 90077

Interamericas Corp.
c/o Hugo Pimienta
11004 Bellagio Place
Los Angeles, CA 90077

Accubanc
c/o Hugo Pimienta
11004 Bellagio Place
Los Angeles, CA 90077

Interamericas Corp.
c/o Hugo Pimienta
11004 Bellagio Place
Los Angeles, CA 90077

U.S. Trustee
515 Rusk, Suite 3516
Houston, TX 77002

David Levy
Fulbright & Jaworski
1301 McKinney #5100
Houston, TX 77010