IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
04/03/2008

| | | |
|---|---|---|
| IN RE: | § | |
| CIRCLE INVESTORS, INC. | § | CASE NO: 02-39553 |
| and | § | |
| COMSTAR MORTGAGE | § | |
| CORPORATION | § | |
| and | § | |
| IFS INSURANCE HOLDINGS | § | |
| CORPORATION | § | |
| and | § | |
| INTERSTAR INVESTMENT CORP. | § | |
| and | § | |
| INTERAMERICAS, LTD. | § | |
| and | § | |
| INTERAMERICAS INVESTMENTS LTD. | § | |
| and | § | |
| INTERAMERICAS HOLDINGS, INC. | § | |
| and | § | |
| INTERAMERICAS FINANCIAL | § | CHAPTER 7 |
| HOLDINGS, LTD. | § | |
| and | § | |
| INTERAMERICAS FINANCIAL | § | |
| HOLDINGS CORP. | § | |
| and | § | |
| AMPER INTERNATIONAL, LTD. | § | |
| and | § | |
| AMPER, LTD. | § | |
| and | § | |
| ORBOST, LTD. | § | |
| and | § | |
| MP CORP. | § | |
| and | § | |
| IFS FINANCIAL CORPORATION | § | |
| Debtor(s) | § | |

**MEMORANDUM OPINION AND ORDER
APPROVING WITHHELD COMPENSATION**

1

*Procedural Background*

On August 22, 2007, Trustee Steve Smith ("Smith") filed an Amended Application and Supplemented First Application for Interim Compensation (docket no. 527) for work completed in the IFS Financial Corporation et al. bankruptcy case (case no. 02-39553) ("IFS").  An IFS creditor, Blitz Holding Corp. ("Blitz) objected to the Application (docket no. 526).  On August 27, 2007, the Court held a hearing on Blitz's objection.  The Court noted that the IFS estate was a complicated case involving dozens of different companies and over a hundred adversary proceedings.  The Court found that Smith's requested fees were reasonable under § 330. 11 U.S.C. § 330. However, the Court was concerned that the fees requested, though reasonable under § 330, may have exceeded the trustee compensation cap provided in § 326. 11 U.S.C. § 326(a). Section 326(a) of the U.S. Bankruptcy Code authorizes trustee administrative fees based on a percentage of monies disbursed from the bankruptcy estate ("disbursement base"). *Id*.

Smith's Application sought $259,843.38 in administrative fees.  Smith derived $259,843.38 from a disbursement base of $7,886,446.07.  The disbursement base included a $1,537,951.31 settlement distribution to Blitz Holding Corp. ("Blitz disbursement") and $2,061,210.04 in transfers to and from the Trustee of a separate bankruptcy estate ("Ehrenberg disbursement").  The Blitz and Ehrenberg disbursements were unusual in that they were made pursuant to settlement agreements.  The Court deferred ruling on Smith's application with respect to the Blitz and Ehrenberg disbursements until submission of further briefing.  The Court authorized interim Trustee compensation based on disbursements other than the Blitz and Ehrenberg disbursements and in the amount of $151,868.51 (docket no. 534).

*The Ehrenberg and Blitz Disbursements*

Trustee Ehrenberg is the trustee of Hugo Pimienta's bankruptcy estate. The Trustees executed an Agreement Regarding Joint Prosecution, Pooling of Confidential Information and Multi-Jurisdictional and Cross-Border Insolvency Protocol (the "Agreement"). The Ehrenberg disbursements arose from this agreement.

The Agreement served dual purposes, including effectuating joint-prosecution of claims. Smith filed over one hundred adversary proceedings related to the IFS estate. Many adversary proceedings involved allegedly unlawful transfers from IFS companies to insiders. Hugo Pimienta was a board member of the IFS companies and consequently was a defendant and material witness for many of the adversary proceedings. The Agreement provided for pooling of confidential information held by both Trustees.[1] Pursuant to the Agreement, Trustees Smith and Ehrenberg agreed to split recoveries obtained by either Trustee in IFS-related litigation. The IFS estate was to receive 2/3's of any recovery, and the Pimienta bankruptcy estate 1/3.[2] The Agreement did not specify how Trustees Smith and Ehrenberg would be compensated for work undertaken pursuant to the Agreement. The Agreement was approved by this Court and by the United States Bankruptcy Court for the District of California (the Court in which the Hugo Pimienta bankruptcy case was pending).

---

[1] Section I, Paragraph 2, subsection (E) provides: "The Parties to this Agreement therefore agree that each of them may share Common Interest Information & Materials with the other in connection with the Lawsuits and any proceedings which may result therefrom. The Parties to this Agreement recognize that this right of exchange will allow them, among other things, to share information, pool resources and coordinate strategies, to the extent that their respective interests justify such actions.

[2] Section II, paragraph 3 provides: "Regardless of the source of any recovered Property, save and except Ficen and LAMS, the Parties shall consolidate all gross recoveries hereinafter made and divide such recoveries as follows: Trustee Smith shall receive two-third of all such recoveries and Trustee Ehrenberg shall receive one-third of all such recoveries for the benefit of their respective bankruptcy estates . . ."

The Agreement also served, in part, as a settlement between the IFS and Pimienta estates. Pursuant to the Agreement, Smith agreed to withdraw a $105,693,367.00 proof of claim filed in the Pimienta estate.[3] Ehrenberg agreed to not file any proofs of claim in the IFS estate.[4]

Smith subsequently prosecuted the adversary proceedings and entered into substantial settlements. Pursuant to the Agreement, Smith disbursed approximately $2 million to Ehrenberg. Smith's brief states that $258,009.99 has been received from Ehrenberg pursuant to the Agreement but the funds have not been disbursed.

The Blitz distribution arose from a settlement of an adversary proceeding filed by Blitz against IFS. In 2002, Blitz obtained a judgment against IFS ("Judgment") exceeding $60 million. Blitz also obtained an order requiring IFS to turn-over stock held by IFS to pay, in part, the Judgment. Blitz and IFS later executed an Agreed Order with respect to the stock. The Agreed Order provided that the stock was property of the IFS bankruptcy estate and that the Trustee would pay 1/2 the proceeds from the stock sale to Blitz.[5] Pursuant to the Agreed Order, Smith sold the stock and disbursed 1/2 the proceeds to Blitz.

Upon consideration of the parties' briefs, agreements, and applicable case law, the Court holds that the Ehrenberg and Blitz disbursements are includable within § 326(a)'s disbursement

---

[3] Withdrawal was contingent upon receipt of $250,000 in distributions from Trustee Ehrenberg. The contingency was met.

[4] Section II, paragraph 6 provides: "Other than the division provided for in paragraph 3 hereof, Trustee Ehrenberg shall assert no claim against the estates of the Houston Entities and, other than Trustee Smith's presently filed Proof of Claim on file in the Pimienta Case, Trustee Smith shall not only make no further claim against the estate of the Pimienta Case but shall also satisfy and withdraw his presently pending Proof of Claim upon receipt of $250,000.00 in total distributions from Trustee Ehrenberg of Trustee Smith's two-thirds of Trustee Ehrenberg recoveries."

[5] The Agreed order provides: "ORDERED that the property, identified on Exhibit "A" hereto and described in Trustee's Motion to be the LAMS Interests, the FICEN Stock and Other IFS Property, which is subject to the control of and further order by the Honorable Lee S. Rosenthal, U.S. District Judge, in Civil Action No. H-00-2247 (the "District Court"), be, and hereby is, determined to be property of the Bankruptcy Estate . . . "

base. Accordingly, the Court authorizes the deferred portion of the Trustee's Interim Application in the amount of $107,974.87.

### *Jurisdiction and Venue*

This Court has jurisdiction of this matter under 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

### *Law*

Section 330 of the Bankruptcy Code authorizes the Court to award a Trustee "reasonable compensation" for services rendered.[6] 11 U.S.C. § 330(a)(1)(A); *In re England*, 153 F.3d 232, 234 (5th Cir. 1998). Section 326(a) provides a cap on "reasonable compensation" based on a percentage of liquidated estate assets. 11 U.S.C. § 326(a).[7] Section 326(a) *limits* rather than *entitles* a Trustee to payment of the provided percentage. *Id.*; *In re England*, 153 F.3d at 235. (emphasis added). Section 326(a)'s cap is based upon "all *moneys disbursed* or turned over in the case by the trustee" to "*parties in interest*." *Id.* (emphasis added). The value of unliquidated property transferred by a Trustee is *not* included in the base. *In re England*, 153 F.3d at 235–36. Only actual monies can be included. *Id.* (citing *In re Barnett*, 133 B.R. 487, 489–90 (Bankr. N.D. Iowa 1991); *In re New England Fish Co.*, 34 B.R. 899, 901–02 (Bankr. W.D. Wash. 1983)); *In re Lan Assoc.'s XI, L.P.*, 192 F.3d 109, 121 (3rd Cir. 1999).

---

[6] Section 330(a)(1)(A) provides that the court may award a trustee: "reasonable compensation for actual, necessary services rendered . . ." 11 U.S.C. § 330(a)(1)(A).

[7] Section 326(a) provides: "In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims. 11 U.S.C. § 326(a).

Disbursed funds need not be "property of the estate." Neither § 326(a)'s plain words nor Courts interpreting the same include the term "property of the estate" within § 326(a).[8] *In re North American Oil & Gas, Inc.*, 130 B.R. 473, 478 (Bankr. W.D. Tex 1990) ("The base is not limited to distributions of property of the estate, as a trustee may disburse monies to parties in interest, within the meaning of Section 326(a) without in the process having actually distributed property of the estate.").

*Analysis*

The primary question concerns whether disbursements made pursuant to a settlement agreement are included with § 326(a)'s disbursement base.

Under Section 326(a)'s plain language, "moneys disbursed" by the Trustee to a "party in interest" are included in the disbursement base. The Court considers the "moneys disbursed" and "party in interest" requirements separately.

**1. Moneys Disbursed**

Generally, Courts have construed § 326(a) pursuant to the provision's plain language. Courts have rejected "constructive disbursement" theories that would include property other than money disbursed by the Trustee. *In re England,* 153 F.3d 232; *In re Lan Assoc.'s XI, L.P.*, 192 F.3d at 121 ("a trustee's compensation must be based only on moneys actually disbursed or turned over to parties in interest, not on constructive disbursements").

---

[8] Accordingly, the Court rejects Blitz's arguments based on the contention that the disbursements were not "property of the estate." Blitz's primary argument with respect to the Blitz disbursement was that the Agreed Order partitioned the sale proceeds so that Blitz's proceeds were not property of the estate. Even if § 326 required property to be "property of the estate," the Blitz proceeds were such property. The § 326 calculation does not characterize proceeds from liquidated property based on who was entitled to payment of the proceeds. Disbursements, by their nature, are owed to someone other than the estate. Section 326 must look at the character of the property *prior* to liquidation. Prior to liquidation, the stocks from which the proceeds arose were "property of the estate." The settlement agreement specifically provided that the stock was "property of the estate." The Court Order approving the settlement agreement specifically provided that the stock was "property of the estate." Blitz does not contend that the stock, prior to liquidation, was not "property of the estate."

Courts have also held that disbursed money may be included within the § 326(a) disbursement base even if the money was liquidated, in part, on behalf of a non-debtor third-party. Courts have held that a trustee can include 100% of the proceeds derived from liquidated property in which a third-party holds an interest. *In re Schautz*, 390 F.2d 797 (2nd Cir. 1968) (holding that the trustee could include within the § 326 disbursement base all proceeds from the sale of property owned in joint-tenancy with a non-debtor); *In re Rybka*, 339 B.R. 464 (Bankr. N.D. Ill. 2006) (holding that "[b]ecause actual monies were disbursed" to a third-party for the party's 1/2 interest in property jointly-owned with the debtor, "those funds should equitably be counted as pat of the Trustee's compensation for her services in relation to the sale of the Property"); *In re Citi-Toldeo Partners II*, 254 B.R. 155 (Bankr. N.D. Ohio 2000) (holding that a Trustee who disbursed moneys to a Trustee of a separate estate on account of a settlement could be included in the disbursing Trustee's compensation base); *In re Guyana Dev. Corp.*, 201 B.R. 462, 474 (Bankr. S.D. Tex. 1996) (holding "it is appropriate to include the full amount of the proceeds of the sale of encumbered property in the basis for the percentage computation.").

This case is analogous to the cited cases. Pursuant to the Agreed Order, Blitz had a 1/2 interest in the stock proceeds. Pursuant to the Agreement with Trustee Ehrenberg, the Pimienta estate had a 1/3 interest in recoveries from IFS adversary proceedings. The Court approved both Agreements. Smith obtained the IFS recoveries and performed the stock sale. Proceeds from the adversaries and stock sale entered the IFS estate. Smith disbursed Blitz's and the Pimienta Estate's rightful shares. Under § 326(a)'s plain language, this form of disbursement qualifies as part of the disbursement base. *In re Rybka*, 339 B.R. at 471 ("[t]he crucial test seems to be whether the particular property has been justifiably administered during the bankruptcy case and

7

whether the trustee has properly performed services in relation to that property . . . ") (quoting COLLIER ON BANKRUPTCY, ¶ 326.02[2][f][ii], at 326-14 (15th ed. Rev.)).

### 2. Party in Interest

§ 326(a) also requires the distribution to be made to a "party in interest." The term is not specifically defined in the Bankruptcy Code. However, in other contexts, courts have interpreted the term to include "any party who has an actual pecuniary interest in the case, as well as to those parties who have a practical stake in the outcome of the case, or to those parties who will be impacted in any significant way by a decision made in the case." *In re Citi–Toledo Partners II*, 254 B.R. at 163 (citing *In re Cowan*, 235 B.R. 912, 915 (Bankr. W.D. Mo. 1999) (citing *In re Amatex Corp.*, 755 F.2d 1034, 1041–44 (3rd Cir. 1985); *Kapp v. Naturelle, Inc.*, 611 F.2d 703, 706 (8th Cir. 1979); *In re Johns-Manville Corp.*, 36 B.R. 743, 754 (Bankr. S.D. N.Y. 1984)).[9]

The disbursement to Trustee Ehrenberg was a disbursement to a "party in interest." The Ehrenberg disbursement was effectively a disbursement to Hugo Pimienta's bankruptcy estate. Pimienta was undoubtedly a "party in interest." The IFS estate had filed a $100+ million proof of claim in the Pimienta estate. Prior to execution of the Agreement, the Pimienta estate intended to file a proof of claim in the IFS estate. The consequences of the Agreement directly impacted the administration of the IFS bankruptcy estate. Waiver of the proof of claim in the Pimienta Estate eliminated or reduced a potential source of assets for the IFS estate. The

---

[9] Within the § 326(a) context, some courts have interpreted "party in interest" to include an entity to whom distribution of estate assets is legitimately made in furtherance of the overall distribution process contemplated in bankruptcy . . . "); *In re North American Oil & Gas, Inc.*, 130 B.R. at 480; *In re Citi–Toledo Partners II*, 254 B.R. at 163 (adopting *North American's* definition of a § 326(a) "party in interest"). The Court does not find it necessary to limit "parties in interest" to parties who would be entitled to distributions from a bankruptcy estate. The plain-language of § 326 does not so limit the definition. The Code drafter's intended for Courts to use § 330 analysis of "reasonable calculation" rather than § 325 to limit unreasonable fees. Other Courts have not so narrowed the definition. *Rybika*, 339 B.R. at 471 (finding that a third-party holding a 1/2 interest in estate property was a "party in interest" even though the third-party was not a creditor that would be entitled to a distribution from the debtor's estate).

cooperation provisions increased assets available to the IFS estate. The Agreement and the benefits sought by the Agreement could not be obtained unless Trustee complied with the Agreements' terms. As a potential creditor, plaintiff, and defendant of the IFS estate, Pimienta had a pecuniary interest, practical stake, and interests impacted in and through the IFS estate. *See In re Citi-Toledo Partners II,* 254 B.R. at 163 (noting that courts have defined "party in interest" as a party with a "pecuniary interest in the case, as well as to those parties who have a practical stake in the outcome of the case, or to those parties who will be impacted in any significant way by a decision made in the case.")[10]

Blitz is a "party in interest." Blitz obtained a multi-million dollar judgment against IFS based on pre-petition conduct. As a judgment-creditor, Blitz was a "party in interest."[11]

### 3. Two Trustees

Section 326(c) limits compensation for multiple trustees assigned to the same bankruptcy case to the caps provided in 326(a). 11 U.S.C. § 326(c).[12] Here, the Tustees were assigned to separate bankruptcy cases. Section 326(c) does not apply. Any policy against "double-dipping" does not apply when the Trustees administer separate bankruptcy estates. *See In re Citi-Toledo Partners II*, 254 B.R. at 162. Even if the same funds pass through both estates, each Trustee has

---

[10] Blitz also contends that the Ehrenberg disbursements should be excluded from the disbursement base because Trustees Smith and Ehrenberg's Agreement did not contain a provision allocating administrative expenses for IFS adversary proceeding recoveries. The Court rejects this argument. Smith does not seek compensation based on the Agreement. Smith seeks administrative expenses provided by statute.

[11] In the alternative, Blitz asks the Court to invoke paragraph 16 of the Agreement. That paragraph provides that the parties can request coordination between courts "with respect to any matter related to the conduct, administration, determination, or disposition of any aspect of the bankruptcy cases of Houston Entities and the Pimienta Case where considered by any two or more courts to be necessary or advisable . . . " The Court sees no conflict between the Courts nor any need to request coordination on this issue.

[12] Section 326(c) provides: "If more than one person serves as trustee in the case, the aggregate compensation of such person for such service may not exceed the maximum compensation prescribed for a single trustee by subsection (a) or (b) of this section, as the case may be."

to administer and disburse the funds, and it is the disbursement that the Bankruptcy Code compensates.

### 4. Equity

Blitz also contends that the Blitz and Ehrenberg disbursements should not be included within Smith's disbursement base as a matter of equity. Blitz essentially contends that Smith should not be compensated for the disbursements because the disbursements did not benefit the general creditors.

The Court rejects Blitz's premise. The agreement with Ehrenberg produced substantial benefits. The Trustee's normal compensation scheme should not be disrupted by conduct that the Court has previously approved just because Blitz retroactively questions the equity of the agreement. The agreements settled claims against the IFS estate and lead to recoveries for the IFS estate. The disbursements were a necessary product of these beneficial and Court-approved agreements.

### *Conclusion*

Based on the foregoing, the Court grants the balance of the Trustee's Amended and Supplemented First Application for Interim Compensation (docket no. 527). The Court authorizes the Trustee to immediately pay Smith $107,974.87 in compensation.

Signed at Houston, Texas, on April 2, 2008.

MARVIN ISGUR
United States Bankruptcy Judge