# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**ENTERED**
**05/13/2013**

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 02-39553** |
| **IFS FINANCIAL CORPORATION,** | § | **Chapter 7** |
| | § | |
| **CIRCLE INVESTORS, INC.** | § | **CASE NO: 04-34514** |
| | § | |
| **COMSTAR MORTGAGE CORPORATION** | § | **CASE NO: 04-34515** |
| | § | |
| **IFS INSURANCE HOLDINGS CORPORATION** | § | **CASE NO: 04-34516** |
| | § | |
| **INTERSTAR INVESTMENT CORP.** | § | **CASE NO: 04-34517** |
| | § | |
| **INTERAMERICAS, LTD.** | § | **CASE NO: 04-34519** |
| | § | |
| **INTERAMERICAS INVESTMENTS LTD.** | § | **CASE NO: 04-34520** |
| | § | |
| **INTERAMERICAS HOLDINGS, INC.** | § | **CASE NO: 04-34521** |
| | § | |
| **INTERAMERICAS FINANCIAL HOLDINGS CORP.** | § | **CASE NO: 04-34523** |
| | § | |
| **AMPER INTERNATIONAL, LTD.** | § | **CASE NO: 04-34525** |
| | § | |
| **AMPER, LTD.** | § | **CASE NO: 04-34526** |
| | § | |
| **ORBOST, LTD.** | § | **CASE NO: 04-34529** |
| | § | |
| **MP CORP.** | § | **CASE NO: 04-34530** |
| | | **Jointly Administered Order** |
| **Debtor(s).** | | **Judge Isgur** |

## <u>MEMORANDUM OPINION</u>

The Court examines whether W. Steve Smith, a chapter 7 trustee with a long history of distinguished service, must be removed pursuant to 11 U.S.C. § 324. Because Smith willfully breached his fiduciary duty to the Estate, the Court concludes that he should be removed as a trustee in this case. Because no valid basis exists for an exception to the statutory mandate of

§ 324(b), the Court recognizes that the effect of this decision is to remove Smith from all cases in which he is a trustee[1].

## Jurisdiction and Evidentiary Standard

This Court has jurisdiction over the removal of a trustee pursuant to 28 U.S.C. § 1334. Removal of a trustee is a core matter under 28 U.S.C. § 157(b)(2)(A).

Smith should only be removed as Trustee in this case if there is clear and convincing evidence justifying his removal.  *In re CNC Payroll, Inc.,* --- B.R. ----, 2013 WL 1844109 (Bankr. S.D. Tex. 2013) (Smith not removed as Trustee where clear and convincing standard not satisfied).  Clear and convincing evidence is "that weight of proof which produces in the mind of the trier of fact a firm belief on conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004).

## Events Giving Rise to Show Cause Order

On November 8, 2011, Smith and his law firm were required to defend an appeal of a favorable judgment.  Oral arguments were scheduled before the United States Court of Appeals for the Fifth Circuit in New Orleans.  Smith attended as lawyer and Trustee.  Ms. Smith attended as the Trustee's lawyer.  The Estate was billed $3,486.37 in travel expenses related to the oral argument.  The travel expenses were incurred starting Saturday, November 5, 2011 and continued through Wednesday, November 9, 2011.  They included hotel room charges of over $1,600.00, over $600.00 in food charges, $900.00 in airplane tickets, and $170.00 in taxi fares.

---

[1]  Section 324(b) provides that when a trustee or examiner is removed in one case, the "trustee or examiner shall thereby be removed in all other cases under this title in which such trustee or examiner is then serving unless the court orders otherwise."  The removal was not stayed by the Bankruptcy Rules and was effective on entry.

Smith was first questioned about the expenses at a hearing on April 25, 2013.  At that time, he testified that it was appropriate for the Estate to pay for the trip because he wanted to be in New Orleans in advance of the oral argument.  Smith testified that he and his wife traveled to New Orleans on Saturday to avoid the distractions attendant with preparation and travel.  Smith testified that it was best for him and his attorney (Ms. Smith) to be in New Orleans to prepare for the oral argument.

On April 25, 2013, the Court issued a show cause order as to why Smith should not be removed as trustee.  The Court ordered Smith to file certain documents, including copies of all hotel bills, food bills, airline bills and other invoices pertaining to the New Orleans trip.  No food bills or taxi bills were filed (the Court assumes that they do not exist).  Otherwise, Smith largely and timely complied with the order.

A review of the bills reflects that Smith and his wife traveled to New Orleans on Saturday, November 5, 2011.  The Court was surprised to learn, on reviewing the invoices, that the Smiths were accompanied by their two children.  The Smiths arrived shortly after noon and no work (other than travel time) was billed to the Estate on Saturday.   Substantial work was billed to the Estate on Sunday, with Ms. Smith billing 7.3 hours and Mr. Smith billing 3.0 hours. On Monday, Ms. Smith billed 4.1 hours and Mr. Smith billed 3.0 hours in preparation for oral argument.  On Tuesday, the Smiths billed 3.0 and 3.5 hours for attending the oral argument.  No time was billed for Tuesday afternoon following oral argument or for Wednesday morning prior to their return to Houston.

Because the bills were from Smith's own law firm, Smith's fiduciary duty required him to assure that the transactions with his law firm were subject to the highest standards of

fundamental fairness.  *In re CNC Payroll, Inc.,* --- B.R. ----, 2013 WL 1844109 (Bankr. S.D. Tex. 2013); *Int'l Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 577 (Tex. 1963).

As mitigation, Smith offers that a number of the expenses from the trip were not billed to the Estate.  These included the airplane tickets for Smith's children, the first class portion of airfare for Mr. Smith and for Ms. Smith, a significant amount of food expenses, and movie charges.  Nevertheless, after crediting all of these expenses, the net travel cost to the Estate (for expenses) for the oral arguments in New Orleans was $3,486.37.  Although the Court credits this conduct by Smith, it does not justify the imposition of the balance of the charges.

Smith also testified that the trip should be viewed in context.  He testified that the Smith family did not take advantage of New Orleans' gambling opportunities or other nightlife.  While irrelevant, the statement is largely accurate.  However, in addition to over $900.00 in room service and minibar charges, the Smiths spent over $750.00 in food and bar establishments.[2]

The Court does not criticize the Smiths for these activities.  They are, however, inconsistent with Smith's testimony that the trip was designed for isolation in order to prepare for oral argument at the Fifth Circuit.

## Background

Smith justifies the trip by explaining that it was important for him and Ms. Smith to isolate themselves in New Orleans to prepare for the oral argument.  As explained below, this explanation is inconsistent with the objective facts of the case.

---

[2]  The Estate was not charged for all of these expenses.  Approximately $620.00 was charged for food expenses to the Estate.

Accordingly, to test Smith's unsupported testimony, the Court provides both background and an examination of how Smith, as fiduciary, has previously administered the Estate's relationship with Smith's law firm.

IFS and seventeen affiliated organizations are debtors in a series of chapter 7 cases. These bankruptcy cases started when an involuntary petition was filed against IFS Financial Corporation on August 23, 2002. After no answer was filed to the involuntary petition, the Court issued an order for relief against IFS Financial Corporation on October 11, 2002.

W. Steve Smith was appointed the chapter 7 trustee on October 15, 2002. On December 27, 2002, Smith sought to retain his own law firm as counsel to the Estate. By order entered on January 9, 2003, the Court authorized the retention of Smith's law firm, with Smith's wife as attorney-in-charge. The firm was retained on an hourly basis.

In 2004, Smith filed involuntary bankruptcy petitions against a number of affiliated entities and also caused certain entities to file voluntary chapter 11 petitions. Smith was appointed by the United States Trustee as trustee in each of the affiliated cases. On January 3, 2005, the affiliated cases were ordered jointly administered.

In October, 2004, Smith filed over 100 adversary proceedings seeking to recover assets that he alleged had been wrongfully diverted from the Estate.

On November 3, 2004, Smith sought to retain his own firm in twelve of the affiliated cases. He again sought to have his wife designated as attorney-in-charge.

On January 12, 2005 (later amended on March 22, 2005), the Court denied Smith's application to retain his own law firm to represent the twelve additional entities. The application was denied when the Court determined that Smith had not demonstrated that it was in the best interest of the Estate for Smith to retain his own law firm. Among other things, the application

stated that Smith wished to hire his own firm (in a case expected to be profitable) to offset losses that the firm incurred in unrelated cases that Smith's firm undertook on which it lost money.  The Court rejected this as a legitimate consideration in a trustee's employment decision.

### Renewed Application to Employ

On May 31, 2006, Smith filed an amended application to retain his own law firm.  In the amended application, Smith represented that he had made extensive efforts to retain independent counsel.  He further represented that those efforts had been unsuccessful, and offered specific reasons that explained the difficulties in locating outside counsel.  Smith proposed that the Court authorize Smith's retention of his own firm.  On June 15, 2006, Blitz Holdings (the Estate's largest creditor) objected to Smith's retention of his own firm.

Smith and Blitz subsequently reached a compromise.  Consistent with the compromise, the Court approved Smith's retention of his own firm on August 3, 2006.  In general, the order allowing Smith's retention provided that he would be retained on an hourly basis for past work, but on a contingent fee basis for work on the adversary proceedings that had not yet been resolved.  The order explicitly required Smith's law firm (rather than the Estate) to advance the cost of all expenses in the adversary proceedings.  Smith's firm was to be reimbursed for expenses only out of recoveries.  The firm received a contingent fee of 45% of 2/3 of any gross recovery from the adversary proceedings.  The order required Smith to file semi-annual status reports with the Court.[3]

On April 12, 2007, Juan Manuel Jiminez and certain other individual creditors moved to remove Smith as Trustee and alleged substantial wrongdoing by Smith.  Multiple creditors joined

---

[3]  Smith did not consistently comply with this portion of the Order.  If he had done so, the New Orleans expenses would have been disclosed in the report.  Although the Court never modified the order, there was substantial evidence that Smith's compliance was waived by Blitz.  This does not excuse Smith's failure to comply with the Order.

in the motion.  At a hearing on June 11, 2007, none of the movants appeared in support of the motion to remove the Trustee.  By order entered June 11, 2007, the Court denied the motion for want of prosecution.  A new motion to remove Smith was filed on July 2, 2007.  The Court conducted a second hearing on July 10, 2007.  There were again no appearances and the motion to remove Smith as Trustee was denied.

**Blitz's Motion to Convert**

On February 17, 2009, Blitz (as referenced above, the Estate's largest creditor, claiming over $75,000,000 in unsecured debt) sought to convert the case from chapter 7 to chapter 11. The motion alleged a loss of confidence in Smith's administration of the Estate.  Most importantly, Blitz alleged that the Trustee was planning to distribute funds primarily to the professionals in the case.  Blitz alleged that if Smith remained as the trustee, there would be an inconsequential future distribution to the holders of unsecured claims.  The true purpose of the conversion motion was to remove Smith as trustee.

After Blitz sought to remove Smith as trustee, Smith sued Blitz in adversary proceeding 09-3110.  The suit sought both disallowance of the Blitz claim and an affirmative recovery against Blitz.

On May 22, 2009, the Court conducted an extensive hearing on the motion to convert. The hearing began at 9:36 a.m. and continued through 5:05 p.m.  At the conclusion of the hearing, the Court held that:

- Smith had sued Blitz in retaliation for filing the motion to convert.

- Smith was not complying with the August 3, 2006 order implementing the compromise of Smith's renewed application to employ.  Specifically, Smith was attempting to use Estate funds to pay hundreds of thousands of dollars in expenses that Smith's firm should have paid.

- The Court would not convert the case to a case under chapter 11 because the purpose of the conversion was no longer applicable—Smith would not be allowed to use Estate funds to pay expenses that should have been paid by Smith's law firm.[4]

The Court is confident that its May 22, 2009 order was correct when issued. But, correct or not, the Court's order was undoubtedly beneficial to the Estate (that did not have to pay the expenses) and harmful to Smith's law firm (that did have to pay the expenses).

Despite the substantial benefit to the Estate, Smith, in his capacity as Trustee:

- Sought reconsideration of the findings regarding the proper allocation of the litigation expenses (See ECF #803).

- Appealed the May 22, 2009 order.

At an evidentiary hearing on May 10, 2013, Smith testified that he appealed the order in his capacity as trustee because it was the right thing to do given his confidence that the Court erroneously ruled in the Estate's favor and against Smith's firm. Smith apparently never considered that his actions—attempting to overturn a highly favorable ruling for the Estate that was obtained for the Estate by Blitz—were antithetical to the Estate's interest.

As he did when he sought to retain his own law firm in 2004, Smith, as trustee, was willing to place his law firm's economic interests before the Estate's interests. Although the Court recognizes the conflict that confronted Smith, he did not have the option of abandoning the Estate's best interest in favor of the interest of his law firm.

_____

[4] At a hearing on a subsequent motion for reconsideration, the Court clarified to Smith:

> What I found was that the whole basis of the motion, which was that you were draining the estate dry and using other monies to pay for litigation, should stop. I mean, that was their whole theory. And I said that theory makes no sense because you can't do that under the retention order. Under the retention order, each individual adversary proceeding, worst case, is a break-even. If I'd make the change in that finding, I've got to reconsider whether the judgment was right. It was very material to what I was doing. So if I have to change that finding, I may change the judgment.

**Blitz Settlement**

On November 20, 2009, Smith filed a motion to approve a settlement with Blitz. Among other things, the proposed settlement resolved any disputes arising out of the Court's May 22, 2009 order and the appeal of that order. After notice and hearing, the Court approved the settlement by order entered on December 7, 2009. Among other things, the settlement agreement would allow Smith's firm to recover the expenses incurred in appeals of adversary proceedings, and provided a formulaic distribution of future funds received by the Estate.

**Application for Distribution Authority**

On February 28, 2013, Smith filed a motion seeking authority to distribute certain litigation proceeds. Under the Trustee's proposed distribution, all funds would have been used to pay litigation related expenses, and no funds would have been payable to the Estate's general creditors. The expenses set forth in the motion included unspecified reimbursable expenses incurred by Smith's firm in the appeal of adversary proceeding 04–03745. The application did not detail the expenses. At the May 10, 2013 hearing, Smith acknowledged an obligation to attach the detailed expenses. He also acknowledged that the detailed expenses were not included with the application, but testified that the detail was omitted by oversight.

On March 20, 2013, Blitz opposed the application for distribution authority. On March 21, 2013, the Court set a hearing on the application. The hearing was scheduled for April 25, 2013.

After Blitz filed its opposition, Smith filed an exhibit list, with attached exhibits, at 2:15 p.m. on April 23, 2013. The exhibits included a 39 page invoice from Smith's firm. Pages 32-33 of the invoice includes the following entries:

| 11/18/2011 | E110 | | 1.00 | $75.00 |

11/11/11 Reimbursement paid to W. Steve Smith for parking at airport for flight to New Orleans, LA to attend Oral Hearing at 5th Circuit Court.
Invoice # 111111

*W. Steve Smith Invoice # 111111*

| 11/18/2011 | E110 | | 1.00 | $900.00 |

11/11/11 Reimbursement paid to W. Steve Smith for roundtrip airfare from Houston, TX to New Orleans, LA to attend Oral Hearing at 5th Circuit Court.
Invoice # 111111

*W. Steve Smith Invoice # 111111*

| 11/18/2011 | E110 | | 1.00 | $2,121.37 |

11/11/11 Reimbursement paid to W. Steve Smith for hotel stay (11/05 - 11/09) in New Orleans, LA to attend Oral Hearing at 5th Circuit Court.
Invoice # 111111

*W. Steve Smith Invoice # 111111*

| 11/18/2011 | E110 | | 1.00 | $170.00 |

11/11/11 Reimbursement paid to W. Steve Smith for taxi to and from airport and to and from hearing in New Orleans, LA to attend Oral Hearing at 5th Circuit Court.
Invoice # 111111

*W. Steve Smith Invoice # 111111*

| 11/18/2011 | E111 | | 1.00 | $220.00 |

11/11/11 Reimbursement paid to W. Steve Smith for meals while in New Orleans, LA to attend Oral Hearing at 5th Circuit Court.
Invoice # 111111

*W. Steve Smith Invoice # 111111*

The above entries, filed less than 48 hours before the scheduled hearing, were the only indication that Smith sought to charge the Estate for a trip to New Orleans. Smith argues that the Court should consider the fact that the allocation of expenses to the Estate "was not done covertly or with any intent to deceive" as a mitigating factor. Smith testified that he intended fully to disclose the expenses.

The Court cannot credit Smith's testimony. Smith failed to disclose the expenses in his application. After an objection was filed, Smith waited until the last minute to disclose the expenses. When questioned about them at the April 25, 2013 hearing, Smith testified that he and his lawyer went to New Orleans so that they could focus on the appeal. Smith did not voluntarily disclose that he took his two young children on the trip.

Moreover, Smith's non-disclosure is viewed in the context of his actions towards this Estate in 2004 and in 2009.  In 2004, Smith placed the interests of his firm ahead of those of the Estate.  In 2009, Smith placed the interests of his firm ahead of those of the Estate.  In that context, the Court is forced to conclude that Smith intended that the charges would not be scrutinized.

### The New Orleans Trip

Former Texas Supreme Court Justice Craig Enoch testified as an expert on Smith's behalf at the May 10, 2013 hearing.  Enoch testified that it was customary and appropriate for an attorney to remove all distractions in preparation for a complex oral argument.  This preparation often requires isolation.  He testified that the issues to be argued were complex, and that it was his experience to spend approximately 20 hours preparing for oral argument, spread over two or three days.[5]  The gravamen of his testimony was that a lawyer must focus solely on the oral argument.

The Court credits Enoch's testimony.  But, rather than isolating themselves, the Smiths went to New Orleans with their two children.  Smith testified that the hotel room had a bed, a rollaway sofa bed, and a television.  The children were watching movies and playing on iPads while Ms. Smith was continuing to prepare for her oral argument.  Smith testified that the hotel arrangement was better than having the two children at home, where the children might wander and not be properly supervised.  It is noteworthy that Mr. Smith's total time working on the oral

---

[5] In this case, Ms. Smith was lead counsel at oral argument.  Ms. Smith recorded time entries for preparation for the oral argument.  Between November 1, 2011 and November 4, 2011, she recorded 22.9 hours of time for "work on oral argument."  After arriving in New Orleans, she billed a total of 11.4 additional hours in preparation for the oral argument.

argument on Saturday, Sunday and Monday totaled 6 hours (averaging 2 hours a day).  As set forth in note 2, Ms. Smith billed only 11.4 hours over the same three-day period.

Enoch testified that he had participated in over 100 oral arguments.  However, he had never billed a client for hotel expenses after the conclusion of an oral argument or for three days in advance of the oral argument:

> **Court:**  **What I am worried about is was it reasonable to charge the Estate for Saturday night when no work was done on Saturday or for Tuesday night after the argument was over?  Why was that reasonable in the context of preparing for an appellate argument?  That's what I am trying to figure out.**

> **Enoch:**  **I would not ---  if I were doing it I would not have expected the Estate to pay for the night after --- I don't know depending on transportation --- I would not expect them to pay for that night after and maybe three days before.  But the question of  allocation whether or not all the charges came through or only parts of the charges came through, which I do, you have a full set of charges and you say these are the things I would like to get reimbursed for.**

> **Court:**  **The Saturday night hotel bill came through and the Tuesday night hotel bill came through against the Estate and I am trying to figure out if you have ever made similar charges to your client?**

> **Enoch:**  **I have not made a similar charge to my client.**

Although pressed on the issue, Smith's counsel could identify nothing in the evidentiary record that would demonstrate that any reasonable person would allow such charges against the Estate.

Smith argues that the billing was simply a judgment error.  He argues that he has learned from this mistake and that it will not be repeated.  Smith offers no explanation as to why his prior conduct, repeatedly rejected by the Court, was not adequate to cause a change in his conduct towards the Estate.

12 / 17

No reasonable fiduciary would allow a law firm to bill an estate for the Saturday night or Tuesday night stays in New Orleans. There is nothing in the evidentiary record to support these charges. The Court concludes that:

- The New Orleans trip was taken with the purpose of attending of the oral arguments.

- The trip was intentionally extended to begin on Saturday and end on Wednesday, with no justification. Other expenses, such as the Sunday night hotel expenses and large food expenditures, are highly questionable.

- Smith intentionally charged the Estate for substantial expenses that were incurred for his personal benefit.

- Smith's actions were a willful breach of his fiduciary duty to the Estate.

The Court concludes that Smith's explanation is an after-the-fact justification, unsupported by any objective facts.

### Standard for Removal

On May 1, 2013, the Court issued an opinion in which it concluded that Smith should not be removed for cause in an unrelated bankruptcy case. *In re CNC Payroll, Inc.,* --- B.R. ----, 2013 WL 1844109 (Bankr. S.D. Tex. 2013). In *CNC,* the Court reviewed the case law regarding removal, as follows:

11 U.S.C. § 324 provides that:

"(a) The court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause. (b) Whenever the court removes a trustee or examiner under subsection (a) in a case under this title, such trustee or examiner shall thereby be removed in all other cases under this title in which such trustee or examiner is then serving unless the court orders otherwise."

What constitutes cause for dismissal is not defined in the Code, but is to be determined on a case-by-case basis. *Dye v. Brown, et al. (In re AFI Holding, Inc.),* 530 F.3d 832, 845 (9th Cir. 2008); see also *Miller v. Miller (In re Miller),* 302 B.R. 705, 709 (B.A.P. 10th Cir. 2003). "It is well established that cause may include trustee incompetence, violation of the trustee's fiduciary duties,

misconduct or failure to perform the trustees duties, or lack of disinterestedness or holding an interest adverse to the estate." *In re AFI Holdings*, 530 F.3d at 845.

In *Morgan v. Goldman*, the chapter 13 trustee negotiated a deal with debtors to use insurance settlement proceeds to pay a secured creditor ahead of unsecured creditors while not reflecting such a deal in the debtors' plan. *In re Morgan*, 573 F.3d 615, 618–619 (8th Cir. 2009). The trustee later changed her testimony and denied she made such a deal. *Id.* at 621–22. The bankruptcy court issued a show cause order, requiring the trustee to show cause why she should not be removed. Id. at 622. The Eighth Circuit upheld the trustee's removal because the trustee gave false testimony regarding her agreement with the debtors. *Id.* at 627–28. The trustee was removed from all cases in which she was serving as trustee. *Id.* at 622.

In *In re AFI Holdings*, the chapter 11 trustee failed to disclose that she had previously represented one of debtor's former investors in a dispute between the investor and the debtor. *In re AFI Holdings,* 530 F.3d at 841. The trustee brought numerous preference actions but failed to bring a preference action against the former client. *Id.* at 842. The trustee did not disclose the extent of her relationship with the former client until after deposition testimony revealed the connection. *Id.* The removal of the trustee for lack of disinterestedness was upheld by the Ninth Circuit Bankruptcy Appellate Panel and the Ninth Circuit. *Id.* at 852.

In *In re Vega*, the chapter 7 trustee solicited $50,000.00 from a lender, ostensibly to fund a lawsuit related to the bankruptcy. 102 B.R. 552, 554 (Bankr. N.D. Tex.1989). Instead, the trustee invested the funds in certificates of deposit, which he used to secure a personal loan obligation. *Id.* at 553. A portion of the funds were delivered to the trustee's law firm and consumed in the course of the firm's general operations. *Id.* The court found that the unauthorized acquisition and use of the funds was a breach of the trustee's fiduciary duty under § 324, and cause for dismissal from all cases in which he was serving as trustee. *Id.* at 554.

In *In re Stephens & Co.*, the court held that although it could not conclude that the trustee was dishonest, his neglect and indifference were grounds for removal, when considering the best interest of the estate and the need to properly interpret and enforce the bankruptcy laws. 30 F.2d 725 (S.D. Cal. 1928). The Court found that the trustee employed negligent methods of accounting for expenses of administration, received irregular and unauthorized commissions, and purchased property of the bankruptcy estate. *Id.* at 725–26. The court held that such acts were detrimental to the estate and could not be approved. *Id.* at 727.

In *CNC Payroll,* the Court determined there was not clear and convincing evidence that

Smith had breached his fiduciary duty to the estate. *In re CNC Payroll, Inc.,* --- B.R. ----, 2013

WL 1844109 (Bankr. S.D. Tex. 2013).  Accordingly, Smith was not removed.  The Court's

conclusion was summarized:

> The Court believes that the Trustee was attempting to benefit his own firm, to the
> detriment of the Estate. However this does not constitute "evidence so clear,
> direct and weighty and convincing as to enable the fact finder to come to a clear
> conviction, without hesitancy, of the truth of the precise facts." The Court's
> hesitancy arises primarily from the Ruzinsky declaration. The affidavit
> demonstrates that once Ruzinsky expressed an interest, Smith treated Ruzinsky
> fairly in all respects. This raises a sufficient question about Smith's conduct to
> create hesitancy by the Court.

*In re CNC Payroll, Inc.,* --- B.R. ----, 2013 WL 1844109 (Bankr. S.D. Tex. 2013).

The Court has no similar hesitancy in this case.  The history of this case reflects that

Smith has consistently acted to advance his law firm's interests to the detriment of the Estate.

Although his prior conduct in this case did not lead to his removal, Smith's prior conduct is

evidence of his intent to act against his fiduciary responsibilities.  That conduct is highlighted by

the following:

- Smith sought to retain his own firm as counsel, alleging that retention was justified, in part, because retention would benefit his firm.  He alleged that it was fair to retain his firm in this potentially profitable case, because his firm accepted unprofitable representation of other Estates.  This reasoning was rejected by the Court.

- When Smith was subsequently authorized to retain his own firm on a contingent fee basis, Smith attempted to shift expenses (that were required to be borne by his firm) to the Estate.  This too was rejected.

- When a creditor challenged Smith's misguided attempt to shift expenses to the Estate, Smith (acting in his trustee capacity) filed a retaliatory lawsuit against the creditor.  The lawsuit was designed solely to punish the creditor for acting against Smith's firm. Although Smith denied that the lawsuit was retaliatory, the Court finds that his testimony on this issue lacked credibility.

- When the Court issued an expense ruling that was favorable to the Estate, but detrimental to Smith's firm, Smith (in his trustee capacity) sought reconsideration of the order and eventually appealed the order.  This conduct, taken in his trustee capacity, was designed to benefit his firm and injure the Estate.

- Smith then charged the Estate for $3,486.37 in expenses to attend oral argument in New Orleans. A substantial portion of the charges are wholly unjustified. No reasonable person would have authorized the Estate to reimburse Smith's firm for the unjustified expenses.

## Removal is the Correct Remedy

The Court recognizes that the amount of money at issue is modest in the context of these chapter 7 bankruptcy cases. Should the Trustee be removed when the amount at issue is so modest? For several independent reasons, the Court concludes that removal is the appropriate remedy.

First, this is not a negligence issue. The Court finds that Smith's conduct was intentional. The beneficiary of the intentional conduct was Smith's law firm. Trustees must be held to the highest standard. When self-dealing, their conduct must be strictly scrutinized. The Court declines to establish a rule that a trustee may engage in intentional breaches of fiduciary duties if the amount of funds are small.

Second, removal is the normal remedy[6] provided in the Bankruptcy Code. 11 U.S.C. § 324(a). The policy makes sense. The Court, and parties in interest, must not be called upon to examine each action taken by a trustee. Indeed, the Court, and parties in interest, should have confidence that a trustee will never intentionally breach a fiduciary obligation.

Third, as outlined in some detail above, this is not the first instance *in this case* when Smith attempted to favor his law firm's interest over the Estate's interest. As the Estate's largest creditor expressed at the May 10, 2013 hearing, this is the conduct that "broke the camel's back."

Fourth, in addition to the previous concerns expressed in the IFS case, Smith was on notice that his treatment of his own law firm was being questioned by the Court. In the *CNC*

---

[6] The statute uses the word "may." Accordingly, the Court's actions are permissive. The Bankruptcy Code does not specify alternative remedies that a Court might employ.

*Payroll* case, the Court had issued an order on January 23, 2013 questioning Smith's conduct in attempting to retain his own firm. *In re CNC Payroll, Inc.,* Case 12-33012, ECF #17. A hearing was held on February 11, 2013 at which time the Court expressed its grave concerns over Smith's conduct. On March 4, 2013, the Court issued an Order to Show Cause in the CNC Payroll case advising that "the Court is concerned that the Trustee in this case (Smith) may have intentionally breached his fiduciary duty regarding the retention of counsel for the Estate." *In re CNC Payroll, Inc.,* Case 12-33012, ECF #22. Smith filed his Application for Distribution Authority on February 28, 2013, 17 days after Smith was informed that the Court was once-again concerned with his self-dealing activities. The Application for Distribution omitted the required detail that would have allowed creditors or the Court to examine the New Orleans transaction. After the Show Cause Order was issued in *CNC Payroll*, Smith nevertheless defended the New Orleans charges at a hearing on April 25, 2013. Smith has suggested that he has now learned his lesson and that remedial or preventative ethics awareness should resolve the issue. The Court does not accept that a trustee with Smith's long year's of experience—and recent heightened awareness of his fiduciary duties when engaged in self-dealing—should simply be given one more warning. Removal appears to be the best effective alternative.

## Conclusion

Smith's breach of his fiduciary duty is clear and unmistakable. Smith must be removed as Trustee in this case. A separate order has been issued.

SIGNED **May 13, 2013.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE